SEYFARTH SHAW LLP
MICHELE J. BEILKE (SBN 194098)
mbeilke@seyfarth.com
JULIA Y. TRANKIEM (SBN 228666)
jtrankiem@seyfarth.com
ALEXANDER W. SIMON (SBN 310842)
asimon@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:  (213) 270-9600
Facsimile:   (213) 270-9601

Attorneys for Defendant
ABBOTT CARDIOVASCULAR SYSTEMS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN ROMO, individually, and on behalf of all other similarly situated, as well as fellow Aggrieved Employees;<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT CARDIOVASCULAR SYSTEMS, INC., a California corporation; DOES 1 through 25, inclusive ,<br><br>Defendant. | Case No.  3:25-cv-8935<br><br>**DEFENDANT ABBOTT CARDIOVASCULAR SYSTEMS INC.'S NOTICE OF REMOVAL OF CLASS ACTION**<br><br>(County of Santa Clara – Downtown Superior Court Case No. 25CV473960)<br><br>Action Filed: August 29,2025<br>Trial Date: |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT,** pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendant Abbott Cardiovascular Systems Inc. ("Abbott") hereby removes to the United States District Court for the Northern District of California, the above-captioned state court action, originally filed as Case No. 25CV473960 in the Superior Court of the State of California, County of Santa Clara. Removal is proper on the following grounds:

## I.   TIMELINESS OF REMOVAL

1. On August 29, 2025, Plaintiff Helen Romo ("Plaintiff") filed a putative Class Action Complaint against Abbott in the Superior Court of the State of California, County of Santa Clara, Case No. 25CV473960 (the "State Court Action").

2. Service was completed via personal service on Abbott's registered agent on September 17, 2025. This notice of removal is timely because it is filed within 30 days after service was completed. 28 U.S.C. § 1446(b).

3. A true and correct copy of Plaintiff's Complaint ("Compl.") is attached as **Exhibit A**.

4. A true and correct copy of Abbott's Answer is attached as **Exhibit B**.

5. A true and correct copy of all other process, pleadings, and orders served upon Abbott in the State Court Action to date are attached as **Exhibit C.**

6. **Exhibits A-C** constitute all process, pleadings, and orders in the State Court Action.

## II.   SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

7. Removal is proper under 28 U.S.C. §§ 1441 and 1453 because this Court has subject matter jurisdiction over this action and all claims asserted against Abbott pursuant to CAFA.

8. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure § 382, California's state statute authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); *see also* Compl. ¶ 40.

9. Plaintiff asks the Court "[f]or certification of the Class and all Sub-Classes on all causes of action." Compl. Prayer. Plaintiff seeks to represent "all present and former non-exempt individuals (excluding clerical and administrative personnel) who worked for [Abbott] … in the State of California, at any time during the period of four years prior to the filing of the complaint in this action up to the present." Compl. ¶ 77.

10. Plaintiff alleges nine causes of action against Abbott: (1) failure to pay all earned wages; (2) failure to pay all earned overtime wages; (3) failure to permit paid 10 minute rest periods; (4) failure to provide 30 minute meal periods; (5) failure to timely pay all earned wages and compensation; (6) failure to pay all earned wages and compensation upon termination; (7) failure to provide lawful wage statements; (8) unlawful mandate for execution of release; and (9) unfair business practices.

11. Among other things, Plaintiff alleges that putative class members are entitled to unpaid wages, statutory and civil penalties, interest, and attorneys' fees and costs. Compl. Prayer ¶¶ 1–16.

12. Removal of a class action is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

13. Abbott denies any liability in this case both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of the putative class. Abbott also intends to oppose class certification on multiple grounds, including that class treatment is inappropriate under these circumstances, in part because there are many material differences between Plaintiff herself and the putative class members she seeks to represent, as well as amongst the putative class members. Abbott expressly reserves all rights, including to oppose class certification and to contest the merits and propriety of all claims asserted in the Complaint. However, for purposes of the jurisdictional requirements for removal only, the allegations in Plaintiff's Complaint identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6).

### A. The Proposed Class Consists of More than 100 Members

14. Based on Plaintiff's allegations, this action satisfies CAFA's requirement that the putative class contain at least 100 members. See 28 U.S.C. § 1332(d)(5)(B).

15. One of Plaintiff's proposed sub-classes consists of "all … non-exempt individuals (excluding clerical and administrative personnel) who worked for [Abbott] … in the State of California" "who were terminated or quit from the employ of [Abbott] at any time during the Class Period." Compl. 77, 78(f). This putative sub-class alone exceeds 100 members. According to Abbott's data, there were at least 200 non-exempt individuals where Plaintiff worked who were discharged or resigned between August 29, 2022, to August 29, 2025. Declaration of Patrick Lavey ("Lavey Decl.") ¶ 5.

16. Accordingly, while Abbott denies that class treatment is permissible or appropriate, the proposed class consists of well over 100 members.

### B. Abbott and at Least One Putative Class Member Are Not Citizens of the Same State

17. Under CAFA's minimum diversity of citizenship requirement, one of the plaintiffs or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

18. A person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

19. Plaintiff is a citizen of California. Compl. ¶ 1.

20. A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1).

21. Abbott is incorporated in California and has its principal place of business in Illinois. The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) & (d)(2)(A) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend,* 559 U.S. 77, 93 (2010). Abbott's headquarters, which are in Illinois, constitute its "nerve center[s]" under the test adopted in *Hertz* because its high-level officers oversee Abbott's activities from that location. As such, Abbott is a citizen of California and Illinois. *See* 28 U.S.C. § 1332(c)(1); *Johnson,* 437 F.3d at 899.

22. Members of the putative class reside in states outside of California and Illinois, including Nevada, Puerto Rico, Texas, Connecticut, Georgia, Utah, Tennessee, and Maryland. Lavey Decl. ¶ 9.

23. Accordingly, Abbott and at least one putative class member are citizens of different states and CAFA's minimal diversity requirement is met. 28 U.S.C. § 1332(d)(2)(A).

### C. The Amount in Controversy Exceeds $5 Million

24. CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2). In calculating the amount in controversy, a court must aggregate the claims of all individual class members. 28 U.S.C. § 1332(d)(6).

25. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens,* 574 U.S. 81, 89 (2014). To satisfy this burden, a defendant may rely on a "chain of reasoning" provided the "underlying assumptions [are] reasonable." *LaCross v. Knight Transp. Inc.,* 775 F.3d 1200, 1201 (9th Cir. 2015); *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott,* 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that are removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (quotations and citations omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee,* 574 U.S. at 87.

26. Moreover, in assessing whether the amount-in-controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993,1001 (C.D. Cal. 2002)). In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo*

*Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

27. Although Abbott denies that Plaintiff's claims have any merit, Abbott avers, for the purposes of meeting the jurisdictional requirements for removal only, that if Plaintiff were to prevail on every claim and allegation in her Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 million. Abbott reserves the right to present evidence establishing the amount placed in controversy by each of Plaintiff's claims, should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional allegations with competent proof," quotations and citations omitted). "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are met." *Arias*, 936 F.3d at 924.

28. Plaintiff's Sixth Cause of Action for waiting time penalties adds more than **$1.248 million** in controversy. Plaintiff alleges that she and other putative class members who ended their employment with Abbott during the three-year period prior to filing this Complaint[1]—August 29, 2022 to August 29, 2025—are entitled to recover of "waiting time penalties" pursuant to California Labor Code section 203. Compl. ¶¶ 130–140.

29. If an employer fails to pay all wages due to an employee at the time of termination, as required by California Labor Code section 201, or within 72 hours after resignation, as required by California Labor Code section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days. Cal. Lab. Code § 203. An employer may not be liable for these penalties if a good-faith dispute exists as to whether the wages are owed. Cal. Code Regs. tit. 8, § 13520. Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be willful. See Cal.

---

[1] The statute of limitations for an action under Labor Code section 203 is three years. Cal. Civ. Proc. Code § 338(a); Cal. Lab. Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1396, 1398 (2010).

Lab. Code § 203. "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs. tit. 8, § 13520 (emphasis added).

30. To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages. *See Mamika v. Barca,* 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere*, L.L.C., 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015) (similar). When estimating that amount in controversy under CAFA, courts in the Ninth Circuit accept a "100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees." *Casanares v. Freshrealm, Inc.*, 4:25-04249, 2025 WL 2701880, at *5 (N.D. Cal. Sept. 23, 2025). That means, where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "reasonable to assume waiting time penalties accrued to the thirty-day limit." *Crummie v. CertifiedSafety, Inc.,* 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017).

31. Abbott denies that any such penalties are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis only, Abbott relies on Plaintiff's allegations of California Labor Code violations. Among other claims, Plaintiff alleges that Abbott "maintained uniform policies and practices" whereby Abbott "regularly and systematically" engaged in violations of "California labor law" by failing to pay all "earned wages and compensation, including minimum, regular and overtime wages." (Compl. ¶ 86.) Likewise, she claims that these "uniform policies and practices" resulted in a failure to "pay Plaintiff, as well as her fellow class members, all of their earned wages, compensation and benefits immediately at the termination of their employment or within seventy-two hours of them quitting." (*Id.*)

32. At least 200 full-time (eight hours per day, five days per week) non-exempt individuals employed by Abbott were either discharged or resigned between August 29, 2022, to August 29, 2025.

Lavey Decl. ¶ 7. The average hourly rate of pay for those 200 full-time, terminated, non-exempt employees was in excess of $26. *Id.*

33. If, as Plaintiff alleges, non-exempt employees who left the employment of Abbott during the three years preceding the filing of the Complaint were owed wages and did not receive them, and assuming that at least 200 non-exempt employees would be able to recover on their claims, the amount in controversy with respect to the waiting time penalties claim for the non-exempt employees who ended their employment between August 29, 2022, to August 29, 2025 would be approximately **$1,248,000.00,** calculated as 30 days x 8.0 hours x pay rate x number of workers.

34. In addition to the waiting time penalties discussed above, Plaintiff seeks to recover, on behalf of herself and the alleged class, meal and rest period premiums for alleged failure to provide meal and rest breaks, unpaid wages for alleged failure to pay minimum and overtime wages, unreimbursed business expenses, and penalties for alleged failure to provide accurate wage statements. (*See generally* Compl.) Plaintiff also seeks liquidated damages, as well as attorneys' fees and costs. (*See* Compl., Prayer for Relief.)

35. During the relevant time period identified in the Complaint (August 29, 2021 to present), Abbott employed more than 100 putative class members. Based on their dates of employment, they worked approximately 140,000 workweeks [at least through August 29, 2025]. (Lavey Decl., ¶ 6.) The average rate of pay for the putative class members was approximately $29 per hour. (*Id.*)

36. With respect to her rest period claim, Plaintiff alleges that Abbott "regularly" failed to authorize and permit duty-free, uninterrupted rest periods of at least ten minutes for every four hours worked. (Compl., ¶¶ 114-117.) Over the four years preceding the Complaint, Plaintiff and putative class members were allegedly denied these rest periods and were not compensated with the additional hour of pay required by Labor Code section 226.7 when rest breaks were missed. (*Id.*)

37. With respect to her meal period claim, Plaintiff alleges that Abbott "regularly" failed to provide timely, uninterrupted, 30-minute meal breaks every five hours of work. (Compl., ¶¶ 118-122.) Plaintiff further claims that Abbott failed to compensate employees when compliant meal periods were not provided. (*Id.*)

38. As such, Plaintiff's third and fourth causes of action for meal and rest period violations adds more than **$4,060,00** to the amount in controversy, based on a conservative assumption of just one missed meal break every two weeks[2] and one missed rest break every two weeks.[3]

39. Abbott's estimates are conservative as these calculations do not account for any recoverable attorneys' fees, which would further increase the amount in controversy by more than **$1 million**. In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation, and courts may award more than this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (finding support for adjusting the 25% presumptive benchmark upward and holding that plaintiff's request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable).

40. In summary, Plaintiff's allegations regarding meal, rest, and waiting time penalties alone places more than $5 million in controversy. This amount in controversy calculation underestimates the total amount placed in controversy by Plaintiff's Complaint because it is based on conservative assumptions about Plaintiff's putative class allegations and does not account for, among other things, any recovery sought for failure to pay all earned wages (First Cause of Action), failure to pay all earned overtime wages (Second Cause of Action), failure to provide lawful wage statements (Seventh Cause of Action), and unlawful mandate for execution of release (Eighth Cause of Action).

41. Plaintiff's allegations therefore place more than the requisite $5 million in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

### III.   THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

34. Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

   a) This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

---

[2] $2,030,000 [$29/hour x 0.5 violations/week x 140,000 workweeks].
[3] $2,030,000 [$29/hour x 0.5 violations/week x 140,000 workweeks].

   b) The action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B);

   c) The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2); and

   d) At least one member of the putative class is a citizen of a state different from that of any defendant as required by §1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

  35. The United States District Court for Northern District of California is the federal judicial district in which the Santa Clara County Superior Court sits. This action was originally filed in the Santa Clara County Superior Court, rendering venue in this federal judicial district proper. 28 U.S.C. § 84(c); see also 28 U.S.C.

  36. Upon filing the Notice of Removal, Abbott will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Santa Clara County Superior Court, pursuant to 28 U.S.C. § 1446(d) § 1441(a).

DATED: October 17, 2025        Respectfully submitted,

                   SEYFARTH SHAW LLP

                   By: /s/ Julia Y. Trankiem
                     Michele J. Beilke
                     Julia Y. Trankiem
                     Alexander W. Simon
                     Attorneys for Defendant
                 ABBOTT CARDIOVASCULAR SYSTEMS INC.